## RICHARD L. HOUCK v. HUBBARD MILLING COMPANY.[1]

May 17, 1918.

:          No. 20,740.

**Construction of contract of sale — payment of freight.**

1. The evidence does not sustain a finding that wheat sold and consigned by the plaintiff, the owner of elevators at Good Thunder and Rapidan, to the defendant milling company at Mankato, was sold f. o. b. Minneapolis at current prices, the freight to Minneapolis to be paid by the defendant and charged to the plaintiff; and it requires a finding that the wheat was sold and consigned from the places named to the defendant at Mankato, where it was milled, at current Minneapolis prices, less the published freight rate from such points to Minneapolis, such published rate being used in fixing the agreed price, the defendant paying the freight from the points of origin to Mankato; and the plaintiff, upon the maximum rates fixed by Laws 1907, c. 232, being later held valid, could not recover the difference between the statutory and published rates to Minneapolis.

**Same — seller cannot recover refund paid by carrier.**

2. When Laws 1907, c. 232, fixing maximum freight rates, was upheld and the injunction restraining the putting into effect of the statutory rates was dissolved, the defendant received from the carrier refunds for overcharges on shipments from Good Thunder and Rapidan to Mankato. Under the facts stated it is *held* that the plaintiff cannot recover of the defendant such refunds as money had and received.

Action in the district court for Blue Earth county to recover $3,674.63. The facts are stated in the opinion. The answer, among other matters,

[1]Reported in 167 N. W. 1038.

alleged that defendant bought grain from plaintiff at the village of Good Thunder at the market price, and that the market price was fixed by taking the price of same at Minneapolis and deducting therefrom the freight charged thereon from Good Thunder to Minneapolis; that during the time the injunction mentioned in the second paragraph of the opinion was in effect defendant was compelled to pay freight charges in excess of the legal rate and the excess so paid the railroads was thereafter repaid to defendant. The case was tried before Comstock, J., who at the close of the testimony denied motions for directed verdicts, and a jury which returned a verdict for $3,201.70. Defendant's motion for judgment notwithstanding the verdict or for a new trial, was denied. From the order denying its motion for a new trial, defendant appealed. Reversed.

*Pfau & Pfau, H. A. Johnson* and *Moonan & Moonan,* for appellant.
*H. L. & J. W. Schmitt,* for respondent.

DIBELL, C.

This action was brought to recover the difference between the published freight rates and the maximum rates fixed by Laws 1907, p. 313, c. 232, on shipments of wheat from the plaintiff to the defendant during a period when the putting into effect of the statutory rates was enjoined. There was a verdict for the plaintiff. The defendant appeals from the order denying its alternative motion for judgment or a new trial.

1. The defendant operates a flour mill at Mankato some 85 miles southwesterly of Minneapolis. The plaintiff operates elevators at Good Thunder and Rapidan on the Milwaukee road a short distance southerly of Mankato. By Laws 1907, p. 313, c. 232, effective from June 1, 1907, the maximum wheat rates from Good Thunder to Minneapolis were 7.9 cents per hundred and from Rapidan to Minneapolis 7.8 cents per hundred. In September, 1907, the putting into effect of the statutory rates was enjoined and the injunction remained in effect until July, 1913. See Minnesota Rate Cases, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. ed. 154, 48 L.R.A.(N.S.) 1151, Ann. Cas. 1916A, 18. In the meantime the published rate was 9 cents per hundred from both Good Thunder and Rapidan to Minneapolis. Within the period stated the

plaintiff sold the defendant large amounts of wheat and to recover the difference between the statutory and published rates to Minneapolis on the shipments thereof this action is brought.

The important inquiry relates to the terms of the contract. The plaintiff claims in effect that the wheat was sold f. o. b. cars at Minneapolis at Minneapolis prices, the freight to be paid by the defendant and charged to the plaintiff and deducted from remittances.

It is alleged that when the statute was upheld and the injunction dissolved the defendant received from the carrier the difference between the published and statutory rates on shipments from Good Thunder and Rapidan to Minneapolis. This allegation is not sustained by the evidence. There were no such refunds and there can be no recovery, based on Minneapolis rates, in a count for money had and received. The defendant, as hereafter noted, received refunds on shipments from Good Thunder and Rapidan to Mankato, and the effect of receiving them is considered later.

We are unable to sustain the plaintiff's view of the contract. The parties had dealt together many years. The wheat was consigned to the defendant at Mankato. It was weighed and graded there. None was shipped to Minneapolis. It was not intended that any of it should go there. Some of it went on an interstate rate from the point of origin with a milling in transit privilege at Mankato and was never subject to the intrastate statutory rate. So far as concerns the contract all might have gone so. The defendant was buying for its own consumption. It was not, so far as the record discloses, a seller of wheat on the market. The plaintiff knows the purpose of the defendant in getting the wheat and just what was being done with it. While he seeks by some of his evidence to claim that there was a sale at Minneapolis, at current prices, with freight paid by the defendant and chargeable to him, it is trifling with facts to sustain such contention. Such a case is not before us. For all the six years of their dealings, from 1907 to 1913, the parties settled on the basis of the current Minneapolis prices less the published tariff of nine cents a hundred. Nothing was said about a different rate. Upon the same basis the defendant was buying the identical wheat at his elevators at Good Thunder and Rapidan. He, in buying from the producer, figured on the published rate and not the suspended statutory

rate. As between the seller and purchaser of a commodity transported by a common carrier the one who bears the expense of transportation is entitled to the refund for overcharges. Jennison Brothers & Co. v. Dixon, 133 Minn. 268, 158 N. W. 398. The application of this principle does not give the plaintiff a right of recovery. He did not sell to be delivered at Minneapolis. No one was to pay freight to Minneapolis and no one did. He did not sell to be delivered at Mankato, he paying the freight. He sold at a price fixed by deducting the published freight rate from points of origin to Minneapolis, never intended to be and never in fact incurred or paid, from going Minneapolis prices. The defendant paid the freight to Mankato. The Minneapolis freight rate in the minds of the parties in fixing a price was the published rate in accordance with which remittances were made and uncomplainingly received. We hold that the evidence does not sustain a finding that the rates were for delivery at Minneapolis at current prices with freight chargeable to the plaintiff, or that any rate other than the published one was in the minds of the parties; that it requires a finding that the selling price was fixed at Minneapolis current prices, less the published carrying charge, the defendant and not the plaintiff paying the carrying charges from the points of origin to Mankato; and that the plaintiff, upon the statutory rates later being held valid, could not recover the difference between the published rates and the statutory rates to Minneapolis.

2. The defendant paid the published rate on the intrastate shipments from Good Thunder and Rapidan to Mankato and when the statutory rates fixed by the act of 1907 were upheld received refunds of the overcharges. On the shipments that went on an interstate rate with a milling in transit privilege at Mankato it received no refunds. The plaintiff claims to recover these refunds as money had and received. What is said in the preceding paragraph substantially disposes of his claim. The contract had no reference to freight rates from Good Thunder and Rapidan to Mankato and such rates did not enter into the fixing of the price. The defendant gave Minneapolis prices less the published rate from the points of origin to Minneapolis and itself paid the freight to Mankato. Neither party has any apparent natural equities. The refunds amount to a find for the defendant. It did business with no thought of them. Upon the same basis the plaintiff bought and sold. There is no

natural equity in defendant having the refunds and none in taking them away and passing them to the plaintiff. If passed to him they should go farther. If economic forces had not been interrupted by the injunction they would have distributed the difference in the two rates and no substantial trace would have been left with either party to this litigation. No legal equity puts a right of recovery in the plaintiff.

All the facts in the case have been presented. There is no need of a new trial. There should be judgment for the defendant notwithsanding the verdict.

Order reversed.